No. 3029

Second Circuit

ALEX OIL CO., INC. v. KAPLAN & SON.

(Dec. 21, 1927.  Opinion and Decree.)
(Feb. 3, 1928.  Rehearing Refused.)

*(Syllabus by the Editor)*

1.  **Louisiana Digest—Sales—Par. 222, 230.**

The seller who does not know of the redhibitory vices of the thing sold is, under Civil Code Article 2531, only bound to restore the price and to reimburse the expenses occasioned by the sale which does not include the cost of transportation.

2.  **Louisiana Digest—Sales—Par. 215, 218, 222.**

Under Civil Code Article 2454, the seller can be held for damages only when knowing of the redhibitory vices of the thing sold, he omits to declare them but not when these vices are unknown to him.

3.  **Louisiana Digest—Sales—Par. 214, 237.**

Sale of a second-hand boiler for use on an oil lease but unfit for that purpose, constitutes a redhibitory vice under Civil Code Article 2520, giving the buyer the right to rescind the sale and claim the return of the purchase price.

4.  **Louisiana Digest—Sales—Par. 216, 224.**

Where the buyer, having the right to rescind the sale under Civil Code Article 2520, consented to the seller's offer to replace the defective boiler, buyer waived the right to demand the immediate return of the purchase price and rescind the sale, dependent upon the new agreement and character of boiler substituted.

5.  **Louisiana Digest—Sales—Par. 228.**

Where boiler which was delivered to buyer was unsatisfactory, and buyer thereafter allowed seller to deliver another substitute boiler in its place, in view of Civil Code Article 2460, buyer did not have the right to arbitrarily refuse to accept the boiler when tendered but where boiler was clearly not of the type required, he was justified in refusing to accept it.

6.  **Louisiana Digest—Sales—Par. 232.**

Where boiler delivered was unsatisfactory, seller cannot recover expense of examination of boiler made with consent of buyer.

7.  **Louisiana Digest—Sales—Par. 241.**

Expenses of tender of boiler which was made by seller to the buyer but refused because not fit for the use which it was to be put, should be borne by the seller.

8.  **Louisiana Digest—Sales—Par. 241.**

The expense of transporting boiler from buyer's lease back to the seller's place of business, should be borne by the buyer where he sued to rescind the sale because he was bound to tender the boiler back to the seller.

9.  **Louisiana Digest—Costs and Fees—Par. 10.**

Where demands of both parties show each to some extent liable, costs should be borne equally, one-half by each party.

Appeal from the Fourth Judicial District Court of Louisiana, Parish of Ouachita. Hon. J. T. Shell, Judge.

Action by Alex Oil Co., Inc., against M. Kaplan & Son.

There was judgment for plaintiff and defendant appealed.

Judgment amended.

Theus, Grisham & Davis, Monroe, attorneys for plaintiff, appellee.

Hudson, Potts, Bernstein & Sholars, Monroe, attorneys for defendant, appellant.

WEBB, J. M. Kaplan & Son, defendant, a partnership with its place of business in Ouachita parish, sold and delivered at defendant's place of business to plaintiff, Alex Oil Company, Inc., a second hand boiler at the price of six hundred and seventy-five dollars.

The boiler was transported to an oil lease operated by plaintiff in LaSalle parish, where it was found that the boiler was in such condition that it could not be used, and defendant called on a boiler-maker to repair it, who, after some work, such as cutting out part of the barrel of the boiler for the purpose of patching it, and removing defective flues for the same purpose, concluded that the boiler was not worth repairing and so notified plaintiff, who took the matter up with defendant.

After some negotiations, defendant sent a boiler-maker to plaintiff's oil lease to examine the boiler, who reported that it could be repaired, of which plaintiff was informed, and defendant offered to stand for a portion of the cost of repair, but plaintiff would not accede and demanded the return of the purchase price, and further negotiations were had, defendant finally agreeing to replace the boiler with another boiler which it had at its place of business.

Following, defendant had the replacement boiler tested, and the test being satisfactory, it had the boiler transported to plaintiff's oil lease, and plaintiff refused to accept it, whereupon defendant had the boiler unloaded at a place near plaintiff's lease and took up the first boiler or the one found to be defective, and hauled it to defendant's place of business in Ouachita parish.

The Alex Oil Company, Inc., brought this suit to recover the price of six hundred and seventy-five dollars and also the expense incurred by it in hauling the boiler from Ouachita parish to its oil lease, or sixty-five dollars, and also the amount which it paid the boiler-maker employed by it to repair the boiler, or twenty-two and 50/100 dollars, as well as the expense incurred by it for telephone charges in negotiations, alleged to have been fifteen dollars, and defendant, in answer to the suit, while denying the right of plaintiff to recover and praying that plaintiff's demands be rejected, alleged that it had incurred expenses amounting to two hundred and twenty dollars, itemized as fifty dollars, consisting of an amount paid by defendant to the boiler-maker sent by it to the plaintiff's oil lease to inspect the boiler, and expense of telephone charges paid in negotiations, and twenty dollars paid to have the replacement boiler tested, and one hundred and fifty dollars, cost of transporting the replacement boiler from Ouachita parish to plaintiff's oil lease and of transporting the other boiler from the oil lease to defendant's place of business in Ouachita parish, for which defendant prayed for judgment in reconvention.

On trial, judgment was rendered in favor of plaintiff for seven hundred and two and 50/100 dollars, and in favor of defendant on the reconventional demand for two hundred and twenty dollars, from which judgment defendant appealed, and the plaintiff has answered the appeal, praying that the judgment be amended.

## OPINION.

While counsel appear to be of the opinion that the transaction of the parties with relation to the two boilers may be considered as distinct, yet from the statement above, which is supported by the pleadings and the evidence, we are of the opinion that while it is necessary to consider the rights of the parties with relation to their actions and agreements as to each of the boilers, yet as the evidence does not show that the parties in their agreement as to the replacement by defendant of another boiler instead of the boiler first delivered, adjusted the differences relative to the boiler first delivered, and the pleadings showing that they are in this action attempting to adjust differences growing out of the delivery of the first boiler, we think that the transactions between the parties should be considered as a whole.

The evidence shows that when plaintiff purchased the first boiler, it was casually inspected by plaintiff but that defendant insisted upon a test of the boiler being made, and as the evidence shows that such test would have revealed the defects in the boiler which were subsequently found by the plaintiff, we are of the opinion that the plaintiff could charge itself only with the subsequent expense incurred by it with relation to such boiler, which would include charges for the transportation of the boiler, or the sum of sixty-five dollars, and the expenses for telephone charges (alleged to have been fifteen dollars) in negotiations having as their object the return of the price or any adjustments with relation thereto, as well as the expense of twenty-two and 50/100 dollars incurred by plaintiff in employing a boiler-maker or repairer to repair the same, unless it could be said that the mere fact of the defendant having sold a boiler which was in such bad condition that it could not be used for the purpose for which it was designed, without regard to whether it appears it knew of the vices or knowing of same failed to advise the purchaser of them, should on the rescission of the sale pay the expenses of transportation of the object sold as well as damages, in addition to the return of the purchase price.

The plaintiff does not cite any authority which announces such doctrine, and we do not find any; on the contrary, the law is that the seller who does not know of the vices of the thing sold, is only bound to restore the price and to reimburse the expenses occasioned by the sale (Article 2531 C. C.), which does not include the cost of transportation (Coulter vs. Cresswell, 7 La. Ann. 367) and can be held for damages only when knowing of the vices of the thing sold he omits to declare same (Article 2454, C. C.).

The evidence, however, establishes that the defects in the boiler were not apparent on a mere inspection of the boiler (as contended by the plaintiff) and as stated it further established that the failure of the parties to discover the vices by an inspection or test of the boiler, was due to the fact that plaintiff would not wait to have the boiler tested and we are, therefore, of the opinion that the plaintiff cannot recover for the cost of transporting the boiler, nor the expense of telephone charges incident to the negotiations after the boiler had been found defective, or the cost of the inspection which was made by the plaintiff, thus leaving, insofar as the plaintiff is concerned, only the claim for the return of the purchase price.

While the boiler which was sold was a second-hand boiler, yet we find that the evidence shows that it was, at the time of the sale, not fit to be used for the purpose for which it was designed, which, we think, constitutes a redhibitory vice, and that the

plaintiff had the right to rescind the sale and claim the return of the price.

"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice." (C. C., 2520.)

Considering that the plaintiff had the right to rescind the sale and demand the return of the purchase price, yet in view of the fact that it consented to defendant's offer to replace the defective boiler with another, it waived the right to demand the immediate return of the purchase price and its right to the return of the purchase price is, under the pleadings, and evidence, dependent upon the construction of the agreement and the character of the boiler offered to be substituted.

The evidence established that the defendant agreed that the boiler would be satisfactory to plaintiff, and it shows that the boiler was in such condition as to be used for the purpose of generating steam, but it was not of the type of the other boiler or such type as is used in oil field operations; and it is argued that from the agreement of the parties, as to the boiler being satisfactory, the plaintiff had the right to arbitrarily refuse to accept, and, further, that as it was not of the type used in the oil field operations, its refusal to accept was based upon sufficient grounds.

A boiler is not such an object as to which one would ordinarily be presumed to reserve the right to reject it, or the right of view, without regard to whether it was suitable for the purpose for which it was to be used, and while it may be conceded that the sale of such an object could be made under such a condition (Article 2460, C. C.), the condition would have to be expressed in unequivocal terms;

and considering the transactions between the parties and their purposes as well as the object of the sale, we do not think the showing that the replacement boiler was to be satisfactory to the plaintiff would warrant the construction that plaintiff was authorized to arbitrarily refuse to accept the boiler when tendered.

However, as stated above, the replacement boiler was not of the type used in oil field operations, in which it is shown that the type of boiler used is constructed so as to be roughly and readily moved from place to place without danger of breaking the steam dome from the boiler, and that a locomotive type of boiler is used, while the boiler offered by defendant was a marine type, which could not be so readily handled, without danger of breaking the steam dome from the barrel of the boiler, and we find that the plaintiff was justified in refusing to accept the boiler tendered, and that he is entitled to the return of the price of six hundred and seventy-five dollars originally paid defendant.

As stated, the reconventional demand was based upon three items of expense, alleged to have been incurred by defendant. The first related to an expense of twenty dollars for sending a boiler-maker to the oil lease to examine the boiler originally purchased, to ascertain whether it could be repaired and, if so, the cost of such repairs.

The evidence does not show that the plaintiff requested the defendant to make an examination of the boiler with a view of having it repaired or for any other purpose, and, as we have stated, the boiler, at the time of the sale, was in such condition as rendered it unfit for the purpose for which it was designed, and the plaintiff had the right to demand the rescission of the sale and the return of the purchase

price, and defendant cannot recover for the expense of the examination of the boiler made with the consent of the plaintiff.

The second item was for fifty dollars for trips, telegrams and telephone conversations in regard to the boilers. While there is some evidence that defendant incurred some expenses for trips, etc., no certain sum is shown to have been incurred either for trips, telegrams or telephonic communications, nor was there any evidence tending to show what portion of the amount was incurred with reference to the original transaction or the replacement transaction, and we therefore find this item should not be allowed.

The third claim was for one hundred and fifty dollars, which the evidence shows was incurred in hauling the marine type boiler to the plaintiff's lease, and in transferring the first boiler from the lease to defendant's place of business.

The effort of the defendant to have plaintiff held to accept the marine type boiler has been refused for the reason that plaintiff was not held bound to accept such a boiler, and we do not think there could be any reason to hold the plaintiff for the expenses of the tender.

The expense of transporting the first boiler from the lease to defendant's place of business, we think should be borne by the plaintiff, for the reason had plaintiff sued to rescind the sale in the first instance he would have been bound to tender the boiler, and in view of the evidence showing that the defendant had offered to have it tested before it was delivered to plaintiff.

In view of the testimony offered bearing on the demands of both parties and each being to some extent liable, we think that the costs should be borne equally, one-half by each, rather than cast wholly upon the defendant (Hunter Canal Co. vs. Robertson's Heirs, 113 La. 833, 37 South. 771.)

It is, therefore, ordered that the judgment appealed from be amended so as to reduce the amount allowed plaintiff to six hundred and seventy-five dollars, and the amount allowed defendant on the reconventional demand to seventy-five dollars, and that all costs be divided equally between the parties.