**MARINE ELECTRICAL WORKS, Inc., v. INTERSTATE ELECTRIC CO., Limited.***

**No. 16236.**

Court of Appeal of Louisiana. Orleans.

Dec. 2, 1935.

Lemle, Moreno & Lemle, of New Orleans, for appellant.

Jos. O. Schwartz, of New Orleans, for appellee.

WESTERFIELD, Judge.

This is a suit for $442.48, growing out of the following transaction:

Plaintiff corporation, through Rudolph Viener, its vice president and general manager, purchased from the defendant corporation, represented by F. B. Stern, its vice president and sales manager, twelve "General Electric pilot-house control searchlights, with extra parts." One of the searchlights was first bought for $70, and shortly thereafter the remaining eleven for $575. No fault was found with the one first purchased, but the remaining eleven were said to have many necessary parts missing, the replacement of which in the open market, it is claimed, would cost $442.-48, the amount sued for.

From a judgment for plaintiff as prayed for, defendant has appealed.

There is no dispute concerning the missing parts, or their replacement cost, and little concerning any essential fact, the issue being one of law.

The searchlights had been acquired by defendant by purchase from the United States Shipping Board about fifteen years prior to their sale to plaintiff, and, when sold, were in the original packages in which they had been placed by the manufacturer the General Electric Company. The defendant, Interstate Electric Company, Limited, did not know that any of the parts were missing. The price paid, $52.27 for each of the eleven searchlights, was far below the manufacturer's price, which is shown to have been, at the time of sale, $350. Mr. Viener, who bought them, knew he was getting a bargain, but underestimated it, for he testified that he thought they were worth only $225 each. The sale was for cash, which was paid at once, and delivery was accepted without examination. Both buyer and seller believed that the boxes contained complete searchlights and all necessary extra parts. There is no suggestion and not the slightest evidence of bad faith on the part of the seller, which thought it was selling what the buyer believed it was buying:

The following articles of the Civil Code are relied upon by plaintiff:

Article 2461. "The sale of a thing includes that of its accessories, and of whatever has been destined for its constant use, unless there be a reservation to the contrary."

*Rehearing denied Jan. 13, 1936. Writ of error refused Feb. 3, 1936.

Article 2462. "A promise to sell, when there exists a reciprocal consent of both parties as to the thing, the price and terms, and which, if it relates to immovables, is in writing, so far amounts to a sale, as to give either party the right to enforce specific performance of same.

"One may purchase the right, or option to accept or reject, within a stipulated time, an offer or promise to sell, after the purchase of such option, for any consideration therein stipulated, such offer, or promise can not be withdrawn before the time agreed upon; and should it be accepted within the time stipulated, the contract or agreement to sell, evidenced by such promise and acceptance, may be specifically enforced by either party."

Article 1930. "The obligations of contract extending to whatsoever is incident to such contracts, the party who violates them, is liable, as one of the incidents of his obligations, to the payment of the damages, which the other party has sustained by his default."

Article 1934. "Where the object of the contract is any thing but the payment of money, the damages due to the creditor for its breach are the amount of the loss he has sustained, and the profit of which he has been deprived, under the following exceptions and modifications:

"1. When the debtor has been guilty of no fraud or bad faith, he is liable only for such damages as were contemplated, or may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract. By bad faith in this and the next rule, is not meant the mere breach of faith in not complying with the contract, but a designed breach of it from some motive of interest or ill will."

In Kohlman v. Witherell & Dobbins Co., 155 La. 57, 98 So. 756, 757, it was said: "In an action against a seller for not delivering the goods contracted for, the universal rule is that the measure of damages is the difference between the contract price and market value. Benjamin on Sales, pp. 618, 727; 2 Sedgwick on Damages (9th Ed.) § 734, p. 1530; Thompson v. Howes, 14 La.Ann. 45; Southern Cotton Oil Co. v. Shreveport Cotton Oil Co., 111 La. 387, 394, 35 So. 610; Hafner Mfg. Co. v. Lieber Lumber & Shingle Co., 127 La. 348, 53 So. 646; Oil City Iron Works v. S. Bender Supply Co., 147 La. 450, 85 So. 201."

In Palmer v. Smith Co., Inc., 165 La. 788, 116 So. 186, 189, the court held that: "The measure of damages for breach of a promise of sale is the difference between the contract price and the market value on the last day on which the seller might have delivered in compliance with the contract, and if the time of delivery has been extended the market price must be taken as of the date to which the time of delivery was postponed. 55 Cyc. 637 (B)."

The principle of law invoked by plaintiff is well established, but in our opinion inapplicable here. Article 1934, Rev. Civ. Code, is found in that part of the Code which deals with obligations under the title "Of the Effect of Obligations," while article 2531 appears under the caption "Of the Obligations of the Seller." The latter article reads: "The seller who knew not the vices of the thing, is only bound to restore the price, and to reimburse the expenses occasioned by the sale, as well as those incurred for the preservation of the thing, unless the fruits, which the purchaser had drawn from it, be sufficient to satisfy those expenses."

In Alex Oil Co., Inc. v. Kaplan & Son, 7 La.App. 485, we find the following: "The law is that the seller who does not know of the vices of the thing sold, is only bound to restore the price and to reimburse the expenses occasioned by the sale (article 2531 C.C.), which does not include the cost of transportation (Coulter v. Cresswell, 7 La.Ann. 367) and can be held for damages only when knowing of the vices of the thing sold he omits to declare same (Article 2454, C.C.)."

In Stracener v. Nunnally Bros. Motor Co. et al., 11 La.App. 541, 121 So. 617, 620, 123 So. 911, it was said: "In this case, the plaintiff is entitled to relief but the situation cannot be restored to its former condition. Therefore the Civil Code, art. 2531, must be applied. * * * In this case the buyer has been put to no expense on account of the purchase, unless it be some small charge on account of storage. He put the car to some use before its final breakdown, but the use and service received and the operating expense were about the same. We think the plaintiff should recover the price, but nothing further."

The right which a purchaser has to buy a part or the whole of an object which he has contracted to buy in the open

market is conferred, as has been said, under the chapter relating to obligations. The effect is to oblige one who has agreed to sell for a certain price to make delivery of that which he sold for that is what he obligated himself to do. But, where a sale is completed and the contract executed, as distinguished from one that is executory, as is the case where something is left to be done, the remedy of the vendee who fails to get what he bought either in whole or in part is to obtain his money back proportionately. Hence, we find article 2531 under the title, "Of the Obligations of the Seller." If the seller be in bad faith, whether the contract be executory or executed, the purchaser can collect such damages as are occasioned by the breach of the contract.

"2. When the inexecution of the contract has proceeded from fraud or bad faith, the debtor shall not only be liable to such damages as were, or might have been foreseen at the time of making the contract, but also to such as are the immediate and direct consequence of the breach of that contract; but even when there is fraud, the damages can not exceed this." Article 1934, Rev. Civ. Code.

█ Of plaintiff's claim of $442.48, $300.78 is for the completion of one searchlight, which it is conceded was so deficient in necessary parts as to be wholly useless. Plaintiff should recover on this account the entire purchase price of this searchlight, or $52.27. The balance of plaintiff's claim is $141.70. If we contrast the market price of an entire searchlight, as shown by the record, with that paid by plaintiff, we discover that the ratio of value is about as 7 to 1. Assuming this ratio is constant as to parts, a proper assumption, we believe, we arrive at the figure of $21.16, as given in opposing counsel's brief. There should be judgment in plaintiff's favor for $73.43.

For the reasons assigned, it is ordered that the judgment appealed from be, and it is, amended so as to reduce the sum awarded plaintiff to $73.43, and as thus amended, the judgment is affirmed, defendant appellant to pay costs of the trial court, and plaintiff appellee to pay costs of this court.

Amended and affirmed.

McCALL, Judge ad hoc, participating in absence of LECHE, Judge.